**GREYHOUND LINES, INC.,**
Plaintiff-Appellee,

v.

**COBB COUNTY, GEORGIA,**
Defendant-Appellant.

No. 81–7903.

United States Court of Appeals,
Eleventh Circuit.

Aug. 2, 1982.

entry of judgment or such cost will not be allowed to be taxed as part of the judgment.

Awtrey & Parker, Toby B. Prodgers, Marietta, Ga., for defendant-appellant.

Sewell K. Loggins, Michael V. Elsberry, Atlanta, Ga., for plaintiff-appellee.

Before GOLDBERG *, HILL and HATCHETT, Circuit Judges.

JAMES C. HILL, Circuit Judge:

This appeal raises two questions, each as troublesome for us today as they have been

---

* Honorable Irving L. Goldberg, U.S. Circuit Judge for the Fifth Circuit, sitting by designa-  tion.

for first year law students since the days of Justinian. First, we must determine what is a cause of action for the purposes of res judicata. Second, if res judicata does not bar the present claim, we must determine whether a joint tortfeasor's active negligence precludes his claim for contribution. As this is a diversity action, we do not write on an unmarked slate. The markings, however, are less than clear.

A brief review of the facts giving rise to this appeal illustrates the problem. On September 12, 1975, a Greyhound bus and a truck owned by Cobb County collided. As a result of the accident, several bus passengers brought suits against Greyhound for the injuries they had sustained. Before most of the suits were tried, however, Greyhound settled the claims.

Cobb County's res judicata defense stems from a suit brought against Greyhound by Dunn, a passenger at the time of the accident. Upon being sued by Dunn, Greyhound filed a third party complaint against Cobb County seeking to recover the damage to its bus and contribution for the claim asserted by Dunn. Although Greyhound settled the claim by Dunn, the third-party complaint went to trial. The jury subsequently apportioned negligence between Greyhound and Cobb County, and judgment for $10,000 was entered for Greyhound. However, the court granted Cobb County's motion for judgment notwithstanding the verdict on Greyhound's claim for contribution.

Three months after judgment was entered in the *Dunn* suit, Greyhound filed this diversity action for contribution from Cobb County on other settlements which had, by then, been paid by Greyhound. Because the *Dunn* judgment conclusively established Cobb County's liability as a joint tortfeasor, Greyhound asked only that Cobb County make contributions with respect to the settled claims.

The district court granted Greyhound's request. Rejecting the defenses asserted by Cobb County, the court held that res judicata did not bar Greyhound's claim for contribution and that Greyhound's active negligence was likewise no bar to contribution. *Greyhound Lines, Inc. v. Cobb County, Georgia*, 523 F.Supp. 422 (N.D.Ga.1981). The district court granted summary judgment for Greyhound and ordered Cobb County to contribute almost $28,000 toward payment of the settled claims. Cobb County now appeals. We affirm.

## I. RES JUDICATA

In 1846, the principles of res judicata were first used by the Georgia courts to preclude a party from relitigating a previously adjudicated claim. *Bostwick v. Perkins*, 1 Ga. 136 (1846). The 1910 Civil Code later codified the common law rule as it was explained in *Watkins v. Lawton*, 69 Ga. 671 (1882). Ga.Code § 4336 (1910). Today's statutes mirror the 1910 provisions.[1] Section 110–501 provides that:

> A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue, or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered, until such judgment shall be reversed or set aside.

Ga.Code § 110–501 (1978).

Section 110–501, as it has been construed by the courts of Georgia, requires a party pleading res judicata to satisfy three elements. First, the party against whom the doctrine is invoked must be the same or one in privity with a party to the prior adjudication. Second, there must be an identity of the cause of action in the two suits. And third, there must be an adjudication by a court of competent jurisdiction. *Lewis v. Price*, 104 Ga.App. 473, 122 S.E.2d 129 (1961).

---

1. The 1910 statutory version of Georgia's res judicata rule is quoted in *Craig v. Cameron*, 27 Ga.App. 455, 108 S.E. 828 (1921).

In the present action Cobb County attempts to invoke the doctrine of res judicata to bar Greyhound's claim for contribution. Cobb County argues that because Greyhound could have made its contribution claims in the *Dunn* suit, but did not do so, it is now barred from bringing those claims.

Two of the three requisites of res judicata are clearly present. The subsequent suit by Greyhound is between the same parties and there is an adjudication by a court of competent jurisdiction.[2] Is there an identity of the cause of action?

## A. The Applicable Standard

The district court held that the claims for contribution constitute a cause of action which is separate from the claim for property damage upon which Greyhound obtained judgment in the *Dunn* suit. Cobb County argues that the district court erred in applying the "same cause of action" test to these claims. The correct analysis, Cobb County asserts, is whether there is an "identity of subject matter." Cobb County construes recent Georgia Supreme Court decisions as rejecting the "same cause of action" test in favor of one requiring only an "identity of subject matter." Those recent Georgia Supreme Court decisions are *Pope v. City of Atlanta*, 240 Ga. 177, 240 S.E.2d 241 (1977), and *Hill v. Wooten*, 247 Ga. 737, 279 S.E.2d 227 (1981).

Those cases, however, are not as broad as Cobb County would have us read them. *Pope* involved a party's failure to present a state law claim in a federal suit where the state claim could have been heard under the federal court's pendent jurisdiction. The *Pope* Court decided only that where "the federal court would have *retained* jurisdiction of the pendent state claims had they been raised, then a subsequent suit in state court would be *barred* by res judicata . . . ." 240 Ga. at 179, 240 S.E.2d at 243 (emphasis in original).

*Hill v. Wooten* is more to the point. In that case Wooten attempted to avoid an adverse judgment in federal court on his civil rights claims by suing the same defendant and the defendant's bondsman in state court on claims of assault and breach of bond of office. The Georgia Supreme Court held that res judicata barred the state law claims. 247 Ga. at 738, 279 S.E.2d at 229. Again, however, the Georgia Court decided only that the federal court would have heard the assault and breach of bond claims under its pendent jurisdiction had those claims been presented. The rule laid down in *Pope* thus required the *Hill* Court to give the federal court judgment res judicata effect.

Neither *Pope* nor *Hill* call for the abandonment of the "same cause of action" analysis which has been employed by Georgia courts without deviation. *See, e.g., Brown v. Brown*, 212 Ga. 202, 91 S.E.2d 495 (1956) (res judicata applies only to same cause of action); *Woods v. Delta Airlines, Inc.*, 237 Ga. 332, 227 S.E.2d 376 (1976) (res judicata not applicable to different causes of action).[3] We conclude that the courts of Georgia would not overrule that standard by implication. We shall not do so for this case.

## B. Cause of Action Analysis

For res judicata to bar the contribution claims in this case the same cause of action must have been previously adjudicated. In the prior suit between Greyhound and Cobb County, the *Dunn* action, Greyhound recovered for damages to its bus. Here, Greyhound seeks contribution for claim settle-

---

**2.** Judgment was entered on the *Dunn* settlement in the Superior Court of Cobb County on May 22, 1980.

**3.** These cases and many more often cite Ga. Code Ann. § 3–607, which provides that "A former recovery, or the pendency of a former suit for the *same cause of action*, between the same parties, in the same or any other court that has jurisdiction shall be good cause for abatement." (emphasis added). This provision of course supports our construction of *Pope* and *Hill*.

ments it has paid.[4] We must decide then whether the property damage and contribution claims constitute the same cause of action for the purposes of res judicata. We conclude that they do not.

■ Before 1966 a tortfeasor could not seek contribution from a joint tortfeasor unless they were sued jointly, judgment was rendered against both of them, and one paid more than his pro rata share of the judgment. *Mashburn & Co. v. Dannenburg Co.*, 117 Ga. 567, 44 S.E. 97 (1903); *Autry v. Southern Railway*, 167 Ga. 136, 144 S.E. 741 (1928). Where joint tortfeasors were not bound by a common judgment, the Georgia courts would not hear and determine claims between those *in pari delicto.* In 1966 the Georgia legislature made two significant changes in that state's rules of contribution. First, the General Assembly eliminated the requirement that the tortfeasor from whom contribution is claimed be one against whom judgment had been entered. Ga. Code § 105–2012(1) (1978). Thus, a tortfeasor can now assert a claim for contribution against a joint tortfeasor who had not been sued by the original plaintiff. *McMichael v. Georgia Power Co.*, 133 Ga.App. 593, 211 S.E.2d 632 (1974).

■ The state legislature's second modification dealt with third party practice in Georgia. With the adoption of the Civil Practice Act in 1966 the Georgia lawmakers permitted a tortfeasor to bring in as a third party defendant one "who is or *may be liable* to him for all or part of the plaintiff's claim against him." Ga.Code § 81A–114(a) [CPA § 14] (1978). (emphasis added). This provision meant that one tortfeasor could implead a second joint tortfeasor without a judgment's having been entered against the former. *Gosser v. Diplomat Restaurant,*

*Inc.*, 125 Ga.App. 620, 188 S.E.2d 412 (1972). In short, a defendant tortfeasor after 1966 has both a substantive right and procedural mechanism to assert contribution claims against joint tortfeasors.

■ The 1966 changes have an important bearing upon the present action. For it seems that Greyhound might have sued Cobb County for contribution in the *Dunn* suit.[5] Thus, while *Gosser* holds that an alleged tortfeasor, sued by the damaged plaintiff but not yet subjected to judgment, may bring a third party complaint against one who "may be liable to him for all or part of the plaintiff's claim against him," it is not clear that a third party action could assert claims for contribution on account of established or potential liabilities to others than the particular plaintiff in the pending action. Before res judicata attaches, however, the contribution claims and the property damage claims upon which judgment was entered in *Dunn* must represent the same cause of action. Under Georgia law, they clearly do not.

The Georgia Supreme Court has held that a third party complaint for contribution is in the nature of an independent suit. *Register v. Stone's Independent Oil Distributors, Inc.*, 227 Ga. 123, 179 S.E.2d 68 (1971). As an independent action, the third party complaint must satisfy separate venue requirements, *Id.* at 126, 179 S.E.2d at 71, and meet its own statute of limitations. *Evans v. Lukas*, 140 Ga.App. 182, 230 S.E.2d 136 (1976). The Georgia Court of Appeals explained the result in *Evans* as follows:

> The rule generally recognized is that a claim for contribution based on tort, where such claim is authorized, does not accrue, and the statute of limitations does not start to run thereon, at the time of

---

**4.** It is interesting, though not dispositive, to note that the settlements for which Greyhound seeks contribution were obtained *after* it had filed a third-party complaint against Cobb County in the *Dunn* suit. It appears that Greyhound could have sought leave to amend its complaint and add claims for contribution for these settlements. *See* Ga.Code §§ 81A–115(a)

and 81A–118(a) (1978). We do not know how the trial court would have ruled on such a motion and thus do not rest our decision upon such tenuous grounds.

**5.** *See* note 4, *supra.*

the commission of the tort, or of the resulting injury or damage, but from the time of the accrual of the cause of action for contribution.

*Id.* at 184, 230 S.E.2d at 138 (quoting Anno., 57 A.L.R.3d 867 (1974)). Because the contribution claim accrues later than the property damage claim, that is, when judgment is entered on the principal suit, and is actually an independent claim, res judicata does not bar the present suit by Greyhound for contribution.[6]

## II. ACTIVE NEGLIGENCE AND CONTRIBUTION

■ Like most states, Georgia did not recognize a common law right of contribution or of indemnity between joint tortfeasors. *Dent v. King*, 1 Ga. 200 (1846).[7] The common law rule against contribution and indemnity developed from an early decision by the King's Bench in England. *Merryweather v. Nixan*, 101 Eng. Rep. 1337 (K.B.1799). In that case Lord Kenyon rejected a joint tortfeasor's claim for "contribution of a moiety," holding that a party would not be allowed to benefit from his own intentional wrongdoing. There were, however, two important restrictions upon the rule in England. First, it only prohibited contribution when the tortfeasor seeking reimbursement acted wilfully and consciously. *Id.* Second, the rule did not apply to claims for indemnity. *See generally*

W. Prosser, *The Law of Torts*, § 50 (4th ed. 1971). Thus, a tortfeasor who had acted negligently or who was merely vicariously liable could claim contribution from a second tortfeasor. *Burrows v. Rhodes*, [1890] 1 Q.B. 816.[8]

The Georgia courts, in adopting and applying the English rule, did not follow those restrictions. Instead, Georgia attempted to do justice between the tortfeasors by allowing a party whose negligence was passive to seek *indemnification* from the party whose active negligence caused the harm. *Central of Georgia Railway v. Macon Railway & Light Co.*, 140 Ga. 309, 78 S.E. 931 (1913); *see* 24 Mercer L.Rev. 697 (1973). Contribution, on the other hand, was provided for by the Georgia legislature in 1863. Ga.Code § 3008 (1863).[9] In short, Georgia law at the turn of the century allowed indemnification based upon the active/passive negligence dichotomy and contribution based upon the code provisions.

Unfortunately, the Georgia courts occasionally merged the active/passive negligence rule into one which seemed to cover both indemnification and contribution. *See, e.g., Central of Georgia Railway v. Macon Railway & Light Co.*, 140 Ga. 309, 78 S.E. 931 (1913); *Peacock Construction Co. v. Montgomery Elevator Co.*, 121 Ga.App. 711, 175 S.E.2d 116 (1970); *Standard Oil Co. v. Mount Bethel United Methodist Church*, 230 Ga. 341, 196 S.E.2d 869 (1973). From these

---

**6.** The result is most compelling in the circumstances of the present case. The contribution claims here did not accrue until 2–3 years after the *Dunn* suit was filed, or when Greyhound settled the claims for which contribution is sought. A party in Greyhound's position could not reasonably be required to amend its complaint each time a suit is filed by an injured passenger or suffer res judicata when it seeks contribution.

**7.** The distinction between contribution and indemnity is that the former refers to apportioning damages between joint tortfeasors by requiring each to pay his proportionate share, while indemnity implies a shifting of the entire loss from the party who paid the judgment to the tortfeasor who should in fairness bear it. The distinction is often blurred.

**8.** An excellent discussion of the common law development of contribution and indemnity appears at 1 G. Palmer, The Law of Restitution § 1.5(d) (1978). Professor Palmer points out that equity first used contribution and indemnity to correct unjust enrichment. For instance, a party who had been required to satisfy a tort claim because his agent had injured someone could bring an action against the agent on a theory of unjust enrichment. In this manner, justice was done between the parties.

**9.** Section 3008 (now § 105–2012(2)) provided, "If the judgment is entered jointly against several trespassers, and is paid off by one, the others shall be liable to him for contribution."

cases Cobb County argues that an actively negligent tortfeasor, such as Greyhound, can claim neither indemnification nor contribution under Georgia law. We disagree.

First, any state decisions handed down before 1966 are unpersuasive. The enactment in that year of Ga.Code § 105–2012 expressly abrogated the common law rules regarding contribution in Georgia. We, therefore, disregard the confused language in the *Central of Georgia Railway* case.[10] Similarly, to the extent that the Georgia Supreme Court appears to rely on *Central of Georgia Railway* in 1973 in *Standard Oil* we respectfully decline to follow that case. *Standard Oil* is unpersuasive for a second reason. That is, the tort recovery for which contribution was sought in *Standard Oil* was based upon an *intentional* tort and § 105–2012 does not apply to intentional torts. *Maxwell Brothers of Athens, Inc. v. Dupree Co.*, 129 Ga.App. 254, 199 S.E.2d 403 (1973).[11]

The final case which Cobb County cites for the proposition that Georgia law does not allow contribution between actively negligent tortfeasors is *Peacock Construction Co. v. Montgomery Elevator Co.*, 121 Ga.App. 711, 175 S.E.2d 116 (1970). The court of appeals in *Peacock*, however, held that § 105–2012(1) did not apply because the accident there occurred in 1964, two years before the effective date of the statute. *Id.* at 713, 175 S.E.2d at 118. The court then remanded the case to the trial court for a determination as to whether the plaintiff might have a claim for *indemnification* based on the active/passive negligence doctrine. *Id. Peacock* thus has no bearing upon the present case.

Furthermore, whether or not the active/passive negligence exception to the common law rule prohibiting *indemnification* between joint tortfeasors survived the 1966 legislation is of no moment to this court. The past and present vitality of that dichotomy derives only from the doctrine of indemnification. The Georgia cases which correctly analyze the contribution issue without reference to active/passive negligence theories are legion. *See, e.g., Georgia Southern & Florida Railway v. Odum*, 152 Ga.App. 664, 263 S.E.2d 469 (1979); *McMichael v. Georgia Power Co.*, 133 Ga.App. 593, 211 S.E.2d 632 (1974); *Gosser v. Diplomat Restaurant, Inc.*, 125 Ga.App. 620, 188 S.E.2d 412 (1972).

Greyhound's claim here is for contribution. The active/passive negligence doctrine, therefore, does not apply. We hold that Greyhound's active negligence does not bar its contribution claim under Georgia law and likewise does not bar the claim in this diversity action.

AFFIRMED.

---

**10.** Cobb county argues that Georgia first enacted a contribution statute in 1863 and, therefore, the Central of Georgia Railway decision should control. This argument is without merit. The former contribution statute, *supra* note 9, applied to joint judgments against cotortfeasors. The present statute, under which Greyhound asserts this claim, abolishes the joint judgment requirement. Thus, only decisions construing the present statute are persuasive.

**11.** Arguably, the Georgia Supreme Court never considered the present issue in Standard Oil. The issue there was did the trial court properly refuse to sever a tortfeasor from a joint judgment. The court, although citing the confused language from Central of Georgia Ry., held only that the tortfeasor seeking severance was actively negligent and, therefore, properly included in the judgment. 230 Ga. at 345, 196 S.E.2d at 872.